AO 106 (Rev. 04/10) Application for a Search Warrant

CLERK'S OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

# UNITED STATES DISTRICT COURT
for the
Western District of Virginia

**DEC - 7 2021**

JULIA C. DUDLEY, CLERK
BY: *[signature]*
DEPUTY CLERK

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

THE CELLULAR TELEPHONE ASSIGNED CALL
NUMBER 423-637-0140 ATTACHED TO VERIZON
WIRELESS

)
)
)
)
)
)

Case No. 1:21 mj 142

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ Western _____ District of _____ Virginia _____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | -distribution and possession with the intent to distribute methamphetamine |
| 21 U.S.C. § 846 | -conspiracy to distribute and to possess with intent to distribute methamphetamine |

The application is based on these facts:
See affidavit in support of search warrant. To ensure technical compliance with 18 U.S.C. §§ 3121-3127, the warrant will also function as a pen-register order. I thus certify that the information likely to be obtained is relevant to an ongoing criminal investigation conducted by the DEA. See 18 U.S.C. §§ 3122(b), 3123(b).

☑ Continued on the attached sheet.

☑ Delayed notice of _30_ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*[signature]*
Applicant's signature

Roy F. Evans, Special Assistant United States Attorney
Printed name and title

telephonically

Sworn to before me ~~and signed in my presence.~~

Date: 12/7/21

*[signature]*
Judge's signature

City and state: Abingdon, Virginia

Pamela Meade Sargent, U.S. Magistrate Judge
Printed name and title

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER **423-637-0140** ATTACHED TO VERIZON WIRELESS | Case No. 1:21-MJ-_____ <br><br> **Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Special Agent Brian Snedeker, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **423-637-0140** (hereinafter referred to as **"Target Cell Phone"**), whose service provider or parent service provider is VERIZON WIRELESS, a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, NJ 07921. Through a narcotics investigation, it has been discovered that the **Target Cell Phone** is a cellular telephone being used by CARLISS

EADY. The **Target Cell Phone** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3. I am a Special Agent with the Drug Enforcement Administration (DEA) and have been so employed for approximately (30) years. During my employment I have received comprehensive classroom training from the DEA in specialized narcotic investigative matters including but not limited to drug interdiction, drug detection, money laundering techniques and schemes, smuggling, and the investigation of individuals and organizations involving the smuggling, cultivation, manufacturing, and illicit trafficking of controlled substances and controlled substance precursors. During my employment as a Special Agent with the DEA, I have participated in the investigations and subsequent arrests of hundreds of individuals involved with the trafficking of methamphetamine (a Schedule II controlled substance). To successfully conduct

these investigations, I (along with other federal, state, and local officers involved in said investigations) have utilized a variety of investigative techniques and resources including physical and electronic surveillance as well as various types of sources of information including informants/cooperating individuals. Through these investigations, my training and experience, and conversations with other experienced Special Agents and law enforcement personnel, I have become familiar with the methods used by traffickers to smuggle, safeguard, and distribute methamphetamine and collect and launder related proceeds. I am aware of the sophisticated tactics they routinely use to attempt to thwart any investigation of their methamphetamine trafficking activities and organizations. These tactics often include the utilization of numerous different cellular telephones (often unregistered or listed in other persons' names), counter surveillance, elaborately planned distribution schemes tied to legitimate businesses, false or fictitious identities, and coded communications and conversations.

4.      Based on the facts set forth in this affidavit, I submit there is probable cause to believe that violations of 21 U.S.C. § 841(a)(1), distribution and possession with the intent to distribute methamphetamine, a Schedule II controlled substance, and 21 U.S.C. § 846, conspiracy to distribute and to possess with intent to distribute methamphetamine, a Schedule II controlled substance,

have been committed, are being committed, and will be committed by CARLISS

EADY and others known and unknown. There is also probable cause to believe

that the location information described in Attachment B will constitute evidence

of these criminal violations, lead to the identification of individuals who are

engaged in the commission of these offenses, and assist law enforcement in

positively identifying CARLISS EADY's location(s) when he is engaged in

narcotics trafficking activities.

     5.     The court has jurisdiction to issue the proposed warrant because it is

a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically,

the Court is a district court of the United States that has jurisdiction over the

offense being investigated; *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

     6.     This affidavit is intended to show that there is sufficient probable

cause for the requested search warrant and does not purport to set forth all of my

knowledge of this matter. The facts set forth in this affidavit are known to me as

a result of my investigation of CARLISS EADY, my training and experience, and

information provided to me by other law enforcement officers. Any reference to

the gender of any unnamed person within this affidavit does not necessarily

reflect the true gender of said person.

     7.     During September 2021, an investigation into the methamphetamine

trafficking activities of Charlie STILTNER revealed that Charlie STILTNER resides within the Western District of Virginia and travels to Sullivan County, Tennessee (located within the Eastern District of Tennessee) to distribute methamphetamine. Since September 2021, a reliable confidential source (hereafter referred to as "CS") has performed multiple (four or more) controlled purchases (monitored, recorded, and surveilled by law enforcement) of ounce to multi-ounce quantities of methamphetamine from Charlie STILTNER within Sullivan County, Tennessee. Each of the controlled purchases involved multiple cellular telephone calls and/or texts between the CS and Charlie STILTNER coordinating said controlled purchases. During the most recent controlled purchase (occurring during the last week of October 2021), law enforcement surveilled Charlie STILTNER departing his known primary residence in Bristol, Virginia (identified as 618 Suffolk Avenue, Bristol, Virginia) and followed him until his subsequent arrival at the meeting/sale location with the CS in Sullivan County, Tennessee. Upon completion of the controlled purchase, law enforcement followed Charlie STILTNER from the meeting/sale location directly back into the Western District of Virginia.

8.      During the majority (75% or more) of the aforementioned controlled purchases, law enforcement observed Charlie STILTNER driving a red, 2008 Honda coupe with Tennessee license plate DBM-745 (registered to a third party)

to and from the transactions. Law enforcement has often observed this red, 2008 Honda coupe parked at Charlie STILTNER's known primary residence, (618 Suffolk Avenue, Bristol, Virginia).

9.     The CS has advised law enforcement that Charlie STILTNER's methamphetamine source of supply is a black male who goes by the nickname "Hot Boy" [aka "Hot Boi" who has been identified by law enforcement as "CARLISS EADY"] and travels south of the Bristol, Virginia/Tennessee region in order obtain the methamphetamine he transports back into the Bristol, Virginia/Tennessee area and with which he subsequently supplies Charlie STILTNER.

10.    A review of **Target Cell Phone** records and Charlie STILTNER's cell phone records revealed at least ninety-five cell phone to cell phone contacts (texts/calls) between the two phones from August 2021 through November 2021 including two (2) contacts on the day of the last controlled purchase of methamphetamine from Charlie STILTNER (reference ¶7 above), five (5) contacts on the day of a different controlled purchase of methamphetamine from Charlie STILTNER, and one (1) contact on the day of yet another controlled purchase of methamphetamine from Charlie STILTNER.

11.    On November 15, 2021, approximately two (2) ounces of methamphetamine were seized by law enforcement from an individual (hereafter

referred to as "Trafficker A") in Bristol, Virginia. Trafficker A subsequently provided the following information:

- Trafficker A has obtained/distributed more than thirty (30) pounds of methamphetamine during the preceding six (6) months.

- Trafficker A's methamphetamine source of supply is a black male named CARLISS EADY who goes by the nickname "Hot Boy".

- CARLISS EADY makes weekly (sometimes bi-weekly) drug runs to the Chattanooga, Tennessee area where he obtains methamphetamine, cocaine, crack cocaine, marijuana, a small amount of heroin, and blue fentanyl pills he then brings back for distribution in the Bristol, Virginia/Tennessee area.

- CARLISS EADY sells approximately eight (8) to ten (10) ounces of crack cocaine each week, eight (8) to ten (10) ounces of cocaine each week, ten (10) kilograms of methamphetamine every two (2) weeks, small quantities of heroin (charging $350 for every (3.5) grams), and a quantity of blue fentanyl pills.

- CARLISS EADY lives in a hotel room in Bristol, Virginia [Trafficker A described the hotel and room and law enforcement was subsequently able to identify the location (hereafter referred to as "Room A of the Budget Inn Express"; located at 101 Gate City Hwy, Bristol, Virginia); located within the Western District of Virginia]. Trafficker A has been in Room A of the

Budget Inn Express with CARLISS EADY and observed approximately seven (7) kilos of methamphetamine under the bed in the room after CARLISS EADY returned from a drug run with ten (10) kilos of methamphetamine (by the time Trafficker A observed the methamphetamine, CARLISS EADY had already distributed three (3) of the kilograms of methamphetamine).

- Trafficker A has observed CARLISS EADY with as much as $40,000 United States Currency.

- CARLISS EADY is on probation out of the Chattanooga, Tennessee area.

- CARLISS EADY uses "Chris Rock's" apartment located at Harbor Landing Apartments in Bristol, Virginia [identified by law enforcement as the residence of Christopher Dan Shade at 195 Harbor Landing, Apt. 101, Bristol, Virginia; located within the Western District of Virginia] as a drug distribution location. Trafficker A has purchased methamphetamine from CARLISS EADY at this apartment about five (5) times during the preceding three to four weeks in two (2) ounce to one (1) pound quantities. Most recently, Trafficker A obtained two (2) ounces of methamphetamine from CARLISS EADY on November 12, 2021 at the Harbor Landing Apartment and obtained a pound of methamphetamine from CARLISS EADY at the Harbor Landing Apartment on November 14, 2021. [In addition to the two (2) ounces of methamphetamine seized from Trafficker A on November 15, 2021, approximately eight (8)

additional ounces of methamphetamine were seized by law enforcement from Trafficker A's residence on this same date after Trafficker A gave consent to search his residence. According to Trafficker A, the methamphetamine seized from his person and his residence by law enforcement on November 15, 2021, was what remained of the one (1) pound of methamphetamine he obtained from CARLISS EADY on November 14, 2021.]

- Trafficker A owes CARLISS EADY several thousand dollars in drug debt.

- Trafficker A has a few of CARLISS EADY's cell phone numbers programmed in Trafficker A's cell phone. The newest cell number for CARLISS EADY is listed under "Hot B" in the "Contacts" listing in Trafficker A's cell phone.

- CARLISS EADY uses his cell phone to coordinate his drug sales via telephone calls and some text messaging.

- CARLISS EADY often has other individuals drive him around [law enforcement is aware that CARLISS EADY's Tennessee driver license is suspended].

12.    Trafficker A subsequently showed this affiant recent texts she received from and sent to CARLISS EADY. The texts were from/to the **Target Telephone Number** and listed under "Hot B" in Trafficker A's cellular phone contact list (reference ¶11 Bullet 10 above). The messages were as follows (all

spelling/misspelling/markings within quotes are as the texts appeared on Trafficker A's cellular telephone):

- October 10, 2021 - From **Target Cell Phone:** "Call me ASAP Hot Boi"

- October 13, 2021 - From **Target Cell Phone:** "This is Hot Boi call me on this number."

- November 12, 2021 - From **Target Cell Phone:** "Harbor Landing" [Trafficker A explained to this affiant that this message was CARLISS EADY's way of telling Trafficker A to go to the Harbor Landing Apartment to obtain methamphetamine from CARLISS EADY – reference ¶ 11 Bullet 8 above.]

- November 13, 2021 - From **Target Cell Phone:** "Call me ASAP"

- November 15, 2021 - From **Target Cell Phone:** "Call me ASAP" [This is the date law enforcement seized approximately two (2) ounces of methamphetamine from Trafficker A and approximately eight (8) ounces of methamphetamine from Trafficker A's residence.]

- November 16, 2021 - From the **Target Cell Phone:** "A u need to get at me"

- November 17, 2021 - To the **Target Cell Phone:** "A brother im gonna be be back around 7 tonight soon as I get back im coming to you.  Listen to me brother I swear I didn't fuck off nothing so ill see ya tonight.  I know ur passed off but

I got you and I got ur money to.  Remember I told you

yesterday I just had to work it out well I did.  Trust me

p"

- November 17, 2021 - To the **Target Cell Phone**:  "you know ill be there you

know I'm no liar and you know I'm always good"

[Trafficker A explained to this affiant that the above two text messages

sent on November 17, 2021 to the **Target Cell Phone** were sent to reassure

CARLISS EADY that Trafficker A was going to be good for the drug debt

Trafficker A owes CARLISS EADY.]

- November 17, 2021 – From the **Target Cell Phone**: "Will see"

13.    During the last forty-five (45) days, law enforcement observed

CARLISS EADY operating the red, 2008, Honda coupe (referenced in Paragraph

8 above) in the Harbor Landings Apartments parking lot.  During this same forty-

five (45) day time period, a license plate reader in the Chattanooga, Tennessee

area detected the license plate that is affixed to the red, 2008, Honda coupe.

14.    On November 22, 2021, the Bristol Virginia Police Department

received a complaint from a concerned citizen regarding continuous drug activity

at Chris Shade's apartment (195 Harbor Landing, Apartment 101, Bristol,

Virginia).  The concerned citizen claimed to have counted approximately thirty

(30) people coming and going from the apartment in an hour span during the night of November 21, 2021.

15. On November 24, 2021, Trafficker A advised this affiant that CARLISS EADY is still making trips to the Chattanooga, Tennessee region and bringing back methamphetamine and other controlled substances to the Bristol, Virginia/Tennessee area for resale. Trafficker A stated that the next trip was planned for November 24-26, 2021. This was the last contact law enforcement had with Trafficker A (Trafficker A has not responded to law enforcement's request for an update/contact).

16. Law enforcement has been performing video surveillance of Room A of the Budget Inn Express since November 18, 2021. This is the hotel room identified by Trafficker A as being CARLISS EADY's residence (reference ¶11 Bullet 5 above). A black male consistent with CARLISS EADY's appearance (height, weight, hair) has been observed and noted as the primary occupant/resident of Room A of the Budget Inn Express (facial recognition has not been possible due to the distance between the video camera and the hotel room door) and has been observed traveling as a passenger in a number of vehicles with different drivers (reference ¶11 Bullet 11 above). A considerable number of visitors have been seen going to and from Room A of the Budget Inn Express and some have been seen entering Room A of the Budget Inn Express

empty handed but then departing with a package.   This activity occurs when the individual appearing to be CARLISS EADY is present in Room A of the Budget Inn Express.  On December 2, 2021, law enforcement observed Trafficker A's motor vehicle parked outside of Room A of the Budget Inn Express and observed Trafficker A departing Room A of the Budget Inn Express itself.  Trafficker A has not provided notice to law enforcement regarding any continued contacts with CARLISS EADY (reference ¶15 above).

17.   During the first week of December 2021, Charlie STILTNER contacted the CS and advised that he has a supply of methamphetamine available for sale.

18.   On December 3, 2021, this affiant received subpoenaed phone records for Trafficker A's cellular telephone.  The records (covering a time period ending on December 2, 2021) revealed that between November 17, 2021 and December 2, 2021, there were approximately 175 contacts (texts/calls) between Trafficker A's cellular telephone and the **Target Cell Phone** including approximately fifteen (15) such contacts on December 2, 2021.

19.   A review of Trafficker A's criminal history revealed his prior conviction for manufacturing methamphetamine.

20.   A review of CARLISS EADY's criminal history revealed his prior felony convictions for possession with intent to distribute (PWID) or distribution

of cocaine, morphine, and marijuana. CARLISS EADY is currently on state probation out of Chatanooga, Tennessee in relation to his aforementioned felony convictions for PWID/distribution of morphine and marijuana. CARLISS EADY is also on federal probation in Chattanooga, Tennessee in relation to his conviction for being a felon in possession of a firearm (the original federal charges included PWID and/or distribution of cocaine and another charge, but those two offenses were dismissed upon CARLISS EADY pleading guilty to being a felon in possession of a firearm and subsequently receiving a ten (10) year prison sentence). This affiant has spoken with CARLISS EADY's federal probation officer who advised that CARLISS EADY is in violation of his conditions of supervision by residing in Virginia. The probation officer also noted that he was aware that CARLISS EADY often travels between northeast Tennessee (the location of Bristol, Tennessee) and Chattanooga, Tennessee.

21.    Based upon the above, this affiant and other experienced law enforcement officers involved with this investigation believe that CARLISS EADY is continuing to supply Bristol, Virginia/Tennessee with methamphetamine that he transports into the area from the Chattanooga, Tennessee region. Furthermore, it is also believed that Trafficker A is continuing to engage in a conspiracy to distribute methamphetamine with CARLISS EADY.

14

22.     Based on my training, experience, and knowledge of this case, I am aware that drug traffickers possess and utilize a cellular or multiple cellular telephones to conduct drug-trafficking related business.  Drug traffickers use cell phones to communicate through voice calls, text messages and smart phone messaging applications.  Your affiant is also aware that drug traffickers routinely travel for the purposes of acquiring, transporting, and distributing drugs as well as collecting related drug proceeds, and they often utilize their cell phones by accessing map applications to locate meeting places and to communicate with suppliers and customers while en route to meeting locations.

23.     In addition, there is probable cause to believe that the location of the **Target Cell Phone** will constitute evidence of the offenses listed in Paragraph 4. Identifying the location of the **Target Cell Phone** for the next thirty days will assist in revealing locations from which CARLISS EADY is obtaining methamphetamine and then maintaining and/or redistributing the methamphetamine within the Western District of Virginia and elsewhere.  It may also reveal locations that may be serving as stash houses or trans-shipment points for bulk methamphetamine as well as locations at which CARLISS EADY is collecting methamphetamine proceeds from his sub-distributors/customers.  The use of GPS information obtained from the **Target Cell Phone** would assist law enforcement in the safe and discreet surveillance of CARLISS EADY as he

meets his methamphetamine source(s) of supply and co-conspirators/sub-distributors/customers, and would assist in identifying CARLISS EADY'S location when he is within the Western District of Virginia and engaged in narcotics trafficking related activities.

24.   In my training and experience, I have learned that VERIZON WIRELESS is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as "GPS data" or "latitude-longitude data;" and (2) cell-site data, also known as "tower/face information" or "cell tower/sector records." E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not

necessarily serve every call made to or from that device.  Accordingly, cell-site data is typically less precise than E-911 Phase II data.

25.     Based on my training and experience, I know that VERIZON WIRELESS can collect E-911 Phase II data about the location of the **Target Cell Phone**, including by initiating a signal to determine the location of the **Target Cell Phone** on the VERIZON WIRELESS network or with such other reference points as may be reasonably available.

26.     Based on my training and experience, I know that VERIZON WIRELESS can collect cell-site data about the **Target Cell Phone**.  Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication.  I also know that wireless providers such as VERIZON WIRELESS typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

27.    Based on the foregoing, I request that the Court issue the proposed warrant pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

28.    I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed.  There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of the **Target Cell Phone** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution.  *See* 18 U.S.C. § 3103a(b)(1).  As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property.  *See* 18 U.S.C. § 3103a(b)(2).  Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above.  *See* 18 U.S.C. § 3103a(b)(2).

29.    I further request that the Court direct VERIZON WIRELESS to disclose to the government any information described in Attachment B that is within the possession, custody, or control of VERIZON WIRELESS. I also request that the Court direct VERIZON WIRELESS to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with VERIZON WIRELESS services, including by initiating a signal to determine the location of the **Target Cell Phone** on the VERIZON WIRELESS network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate VERIZON WIRELESS for reasonable expenses incurred in furnishing such facilities or assistance.

30.    I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Cell Phone** outside of daytime hours.

31.    I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.

Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

Brian Snedeker
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on December __7th__, 2021

Honorable Pamela Meade Sargent
UNITED STATES MAGISTRATE JUDGE

Reviewed by:

Special Assistant United States Attorney          Date

20

## ATTACHMENT A

### Property to Be Searched

1.      The cellular telephone assigned call number **423-637-0140** (the "**Target Cell Phone**"), whose wireless service provider (or parent wireless service provider) is VERIZON WIRELESS, a company headquartered at 180 Washington Valley Road, Bedminster, NJ 07921.

2.      Records and information associated with the **Target Cell Phone** that is within the possession, custody, or control of VERIZON WIRELESS.

# ATTACHMENT B

## Particular Things to be Seized

I.      Information to be Disclosed by the Provider

All information about the location of the **Target Cell Phone** described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the **Target Cell Phone**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of VERIZON WIRELESS, VERIZON WIRELESS is required to disclose the Location Information to the government. In addition, VERIZON WIRELESS must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with VERIZON WIRELESS services, including by initiating a signal to determine the location of the **Target Cell Phone** on the VERIZON WIRELESS network or with such

other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate VERIZON WIRELESS for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.    Information to Be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 21 U.S.C. § 841(a)(1), distribution and possession with the intent to distribute methamphetamine, a Schedule II controlled substance, and 21 U.S.C. § 846, conspiracy to distribute and to possess with intent to distribute methamphetamine, a Schedule II controlled substance, involving CARLISS EADY.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records

2.

produced by the Provider in order to locate the things particularly described in

this Warrant.